STATE OF CONNECTICUT *v.* RICHARD OSTROSKI

BOGDANSKI, C. J., SPEZIALE, PETERS, HEALEY and ARMENTANO, Js.

Argued April 8—decision released June 16, 1981

*Joette Katz,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Michael Connor, Jr.,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Richard Maloney,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant was indicted for the murder of a young woman in her Canton apartment. After a trial before the court, consisting of a panel of three judges of the Superior Court,[1] the defendant was found guilty and sentenced to a prison term of not less than twenty-five years nor more than life. During the trial the court heard evidence and argument on the defendant's motion to suppress "potential testimony or other evidence that was obtained in violation of the constitution or laws of the United States or the State of Connecticut." In denying the motion the court orally stated that the defendant was under "apparent custodial interrogation." We remand the case for further articulation of the issue of custody so that this court can properly review the admissibility of the defendant's incriminating statements and various items of physical evidence.

During the night of April 11-12, 1977, a nineteen-year-old woman was brutally stabbed to death in her Canton apartment. When the defendant learned that Captain McDonnell of the state police wanted to talk with him, the defendant called the state police barracks at Litchfield from a telephone booth

---

[1] General Statutes § 54-82 (b) provides: "If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges consisting of the judge presiding at the session and two other judges to be designated by the chief justice. Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly."

in New Milford. Because the defendant was unfamiliar with the area, a New Milford police officer was sent to the defendant's location. In his own car the defendant followed the officer to the New Milford police station. From there the defendant together with his wife and child rode in a state police car to the Litchfield barracks with a state trooper.

Upon arrival at the Litchfield barracks the defendant was informed that he was not under arrest. McDonnell read aloud from a form listing the *Miranda* rights and the defendant read aloud the portion of the form indicating that he understood those rights and chose not to exercise them. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). During the ensuing conversation the defendant made incriminating statements and authorized an examination of his person and his property. The defendant was then formally placed under arrest.

The defense counsel at trial objected to the admission of the defendant's statements on fifth amendment grounds, contending primarily that the defendant had asserted his right to remain silent but the police did not then terminate the interview. Objection also was raised to the admission of certain physical evidence as being the fruit of the inadmissible confession.

In ruling that the defendant's *Miranda* rights were not violated, the trial court orally stated that the defendant was under "apparent custodial interrogation."[2]    When asked by defense counsel to

---

[2] The trial court stated: "On April 16, 1978, [sic] the Defendant voluntarily came to the Litchfield Barracks with his wife and child, that the Defendant was under apparent custodial interrogation at

elaborate, the trial court described its finding of custody in these words: "[I]t is apparent custodial interrogation, he was given his rights, we focused it on the basic one that you challenged, the right to cease interrogation, that is what we came down to, and that is, I think, the nub of the whole argument that the Defendant raised, so we didn't go into superfluous matters that didn't seem to bear on this particular issue."

The ambiguity of the word "apparent" in the phrase "apparent custodial interrogation" and the trial court's own explanation of its thought processes indicate that the "finding" that the defendant was in custody at the time of his April 16, 1977 interview with the state police was merely an hypothesis which the trial court assumed in order to reach the fifth amendment issue of the protection of the defendant's right to remain silent. Whether and when a person is taken into custody is a question of fact. *State* v. *Derrico,* 181 Conn. 151, 158–59, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). It is the function of the trial court, not this court, to find facts. Whether or not the defendant was in custody

the time, he was given his *Miranda* right warnings. There is a distinction in the *Miranda* warnings from the right to obtain counsel and the right to remain silent. And we are dealing with the *right to remain silent in this matter here,* and to terminate the custodial interrogation. There is some question with respect to the statements made in transcript as to whether or not equivocally or unequivocally the Defendant asked that the interrogation cease. If we find that there is no equivocation, then that would settle the matter there. If we find there is some question on the matter, then we proceed to whether or not there was a waiver of the rights. And as far as the Panel is concerned on it, we do find there was no violation of the *Miranda* rights involved herein, and in accordance with *State* v. *Staples,* [175 Conn. 398, 399 A.2d 1269 (1978)] we make a finding that the confession is voluntarily, knowingly and intelligently made, and may be admitted into evidence."

is a critical threshold question which must be determined before we can properly review the claims made in this appeal. It is, therefore, necessary to remand this case for a further articulation of the trial court's decision on the custody issue.

On appeal the defendant renews his fifth amendment claims and for the first time also claims fourth amendment violations. He then urges suppression of his incriminating statements and certain physical evidence obtained after those violations. The defendant insists that he was unreasonably seized without probable cause at the time he left his own car at New Milford and entered the state police car for the ride to Litchfield, or at least at the time he entered the Litchfield barracks. Although at oral argument before us the state conceded that at the time of the defendant's arrival at the Litchfield barracks there was no probable cause to arrest or detain the defendant,[3] the state argued that the defendant was not in custody during the interrogation there.

Although the fourth amendment claims were not distinctly raised at trial, the defendant has urged that these claims be considered under the "new constitutional right" branch of the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See Practice Book § 3063. The claimed "new constitutional right" is based on the posttrial decision of *Dunaway* v. *New*

---

[3] There need not be a formal arrest for fourth amendment protections to apply. *Rawlings* v. *Kentucky,* 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *Davis* v. *Mississippi,* 394 U.S. 721, 726-27, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969). Because the state has conceded that there was not probable cause to arrest or detain, we need not consider what would constitute probable cause in this case. See *Dunaway* v. *New York,* 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

*York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). In *Dunaway* the United States Supreme Court ruled that statements made by the defendant in the police station interrogation room were inadmissible because of their causal connection with the earlier fourth amendment violation where, without probable cause, a police cruiser was sent to find the suspect and bring him in for questioning; and although no formal arrest was made, the police admitted that they would have compelled the defendant to come with them if he had resisted. Because of the necessity to remand for a further articulation of the trial court's finding of "apparent" custody for fifth amendment purposes and in the interest of justice, we direct the trial court to include in its articulation of the custody issue a consideration of the fourth amendment right to be "secure in their persons . . . against unreasonable searches and seizures." U.S. Const., amend. IV. See *United States* v. *Mendenhall,* 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977).

The supervision of a case on appeal is in the Supreme Court. Practice Book § 3096; *State* v. *McCarthy,* 167 Conn. 472, 477, 356 A.2d 165 (1975). Where "necessary to the proper disposition of the cause," this court may "remand the case for a further articulation of the basis of the trial court's decision." Practice Book § 3060D; *Powers* v. *Powers,* 183 Conn. 124, 125, 438 A.2d 845 (1981); *Robertson* v. *Apuzzo,* 168 Conn. 671, 337 A.2d 544 (1975), on full hearing, 170 Conn. 367, 370, 365 A.2d 824, cert. denied, 429 U.S. 852, 97 S. Ct. 142, 50 L. Ed. 2d 126 (1976); *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365,

367n, 161 A.2d 583 (1960). For the reasons set forth above, sua sponte we remand this case for further articulation.

With particular reference to the issue of custody as it affects the defendant's fourth and fifth amendment rights, it is ordered that the trial court file a memorandum of decision articulating the basis for its ruling which permitted the admission of evidence of the defendant's inculpatory statements and also permitted the admission of testimony and physical evidence resulting from the defendant's oral and written consent.